JOAN B. TUCKER FIFE (SBN: 144572)
jfife@winston.com
Winston & Strawn LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

EMILIE C. WOODHEAD (SBN: 240464)
ewoodhead@winston.com
CAITLIN W. TRAN (SBN: 305626)
cwtran@winston.com
Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Attorneys for Defendants
U.S. BANK NATIONAL ASSOC. and
U.S. BANCORP INVESTMENTS INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

GREGORY J. ANDREWS, an individual,

Plaintiff,

vs.

U.S. BANK NATIONAL ASSOCIATION, et al.,

Defendants.

**Case No. 8:22-cv-00117-DOC-DFM**

**DEFENDANTS U.S. BANK NATIONAL ASSOCIATION AND U.S. BANCORP INVESTMENTS, INC.'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

Hon. David O. Carter

Complaint Filed: December 15, 2021
Pre-Trial Conference: November 14, 2022
Trial Date: December 6, 2022

Pursuant to Local Rule 16-4, U.S. Bank National Association ("U.S. Bank") and U.S Bancorp Investments, Inc. ("USBI") (collectively, "Defendants") hereby submit their Memorandum of Contentions of Fact and Law in support of their defense in this matter.

# I. <u>CLAIMS AND DEFENSES</u>

## A. <u>Plaintiff's Claims</u>

Plaintiff has alleged five causes of action against U.S. Bank and USBI: (1) disability discrimination in violation of California's Fair Employment and Housing Act ("FEHA"); (2) failure to provide reasonable accommodations in violation of FEHA; (3) failure to engage in the interactive process in violation of FEHA; (4) wrongful termination in violation of public policy; (5) violation of California Business and Professions Code Section 17200. Plaintiff has alleged one additional cause of action against USBI: (6) violation of California Labor Code Section 1198.5.

## B. <u>Elements Required to Establish Plaintiff's Claims</u>

As discussed below, the National Banking Act, 12 U.S.C. § 24, preempts Plaintiff's claims under the Fair Employment and Housing Act ("FEHA") to the extent that FEHA confers greater protections than the federal Americans with Disabilities Act ("ADA"). Thus, for example, to prove that he was disabled, Plaintiff must prove (*inter alia*) that he was *substantially* limited in a major life activity (here, work and/or sleep). *See* Manual of Model Civil Jury instructions for the District Courts of the Ninth Circuit, No. 12.1A. Similarly, National Banking Act preemption would preclude Claims 3 through 5 in their entirety.

Because there has not yet been a finding as to whether National Banking Act preemption applies in this case, Defendants list the elements of the FEHA claims that Plaintiff has asserted, and also include footnotes and information about differences in the ADA standard that should apply. Defendants reserve the right to submit and request jury instructions consistent with the ADA.

Claim 1: Disability Discrimination in Violation of FEHA.[1]

As to U.S. Bank, Plaintiff bears the burden of proving each of the following elements:

1. That U.S. Bank was an employer;
2. That Plaintiff was an employee of U.S. Bank;
3. That U.S. Bank knew that Plaintiff had a disability that limited his work and/or sleep;
4. That Plaintiff was able to perform the essential job duties, either with or without reasonable accommodation for his disability;
5. That U.S. Bank discharged Plaintiff;
6. That Plaintiff's disability was a substantial motivating reason for U.S. Bank's decision to discharge Plaintiff;
7. That Plaintiff was harmed; and
8. That U.S. Bank's conduct was a substantial factor in causing Plaintiff's harm.

As to USBI, Plaintiff bears the burden of proving each of the following elements:

1. That USBI was an employer;
2. That Plaintiff was an employee of USBI;
3. That USBI knew that Plaintiff had a disability that limited his work and/or sleep;
4. That Plaintiff was able to perform the essential job duties, either with or without reasonable accommodation for his disability;
5. That USBI discharged Plaintiff;
6. That Plaintiff's disability was a substantial motivating reason for USBI's

[1] Under the narrower standards of the ADA (which should apply based on National Banking Act preemption), Plaintiff would need to prove, as to element 3, that he had a disability that *substantially* limited his work and/or sleep. *See* Manual of Model Civil Jury instructions for the District Courts of the Ninth Circuit, No. 12.1A.

decision to discharge Plaintiff;

7. That Plaintiff was harmed; and

8. That USBI's conduct was a substantial factor in causing Plaintiff's harm. *See* Judicial Council of California Civil Jury Instructions ("CACI") 2540.

Claim 2: Failure to Provide Reasonable Accommodations in Violation of FEHA.[2]

As to U.S. Bank, Plaintiff bears the burden of proving each of the following elements:

1. That U.S. Bank was an employer;

2. That Plaintiff was an employee of U.S. Bank;

3. That Plaintiff had a disability that limited his work and/or sleep;

4. That U.S. Bank knew of Plaintiff's disability that limited his work and/or sleep;

5. That Plaintiff was able to perform the essential duties of his then-current position with reasonable accommodation for his disability;

6. That U.S. Bank failed to provide reasonable accommodation for Plaintiff's disability (after Plaintiff gave U.S. Bank notice of identifying the disability and resulting limitations, and after Plaintiff suggested the reasonable accommodations);

7. That Plaintiff was harmed;

8. That U.S. Bank's failure to provide reasonable accommodation was a substantial factor in causing Plaintiff's harm.

As to USBI, Plaintiff bears the burden of proving each of the following

---

[2] Under the narrower standards of the ADA (which should apply based on National Banking Act preemption), Plaintiff would need to prove: as to element 3, that Plaintiff had a disability that *substantially* limited his work and/or sleep; as to element 4, that U.S. Bank received adequate notice of Plaintiff's disability and desire for a reasonable accommodation; and, as to element 6, that a reasonable accommodation was available that would have enabled Plaintiff to perform the essential functions of the job. *See* Manual of Model Civil Jury instructions for the District Courts of the Ninth Circuit, Nos. 12.1A, 12.7.

elements:

1. That USBI was an employer;

2. That Plaintiff was an employee of USBI;

3. That Plaintiff had a disability that limited his work and/or sleep;

4. That USBI knew of Plaintiff's disability that limited his work and/or sleep;

5. That Plaintiff was able to perform the essential duties of his current position with reasonable accommodation for his disability;

6. That USBI failed to provide reasonable accommodation for Plaintiff's disability (after Plaintiff gave U.S. Bank notice of identifying the disability and resulting limitations, and after Plaintiff suggested the reasonable accommodations);

7. That Plaintiff was harmed;

8. That USBI's failure to provide reasonable accommodation was a substantial factor in causing Plaintiff's harm.

*See* CACI 2541; *Issaian v. J.B. Hunt Transp. Servs., Inc.*, 2021 WL 2450784, at *4-5 (C.D. Cal. May 14, 2021), citing *Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1013 (2009).

Claim 3: Failure to Engage in the Interactive Process in Violation of FEHA.

The ADA does not provide for a standalone claim for "failure to engage in the interactive process." *See Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). Thus, under the ADA, which should apply because of National Banking Act preemption, Plaintiff may not maintain or pursue this claim.

As to U.S. Bank, Plaintiff bears the burden of proving each of the following elements:

1. That U.S. Bank was an employer;

2. That Plaintiff was an employee of U.S. Bank;

3. That Plaintiff had a disability that limited his work and/or sleep, which was known to U.S. Bank;

4. That Plaintiff requested that U.S. Bank make reasonable accommodation for his disability so that he would be able to perform the essential job requirements;

5. That Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that he would be able to perform the essential job requirements;

6. That U.S. Bank failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made;

7. That Plaintiff was harmed; and

8. That U.S. Bank's failure to engage in a good-faith interactive process was a substantial factor in causing Plaintiff's harm.

As to USBI, Plaintiff bears the burden of proving each of the following elements:

1. That USBI was an employer;

2. That Plaintiff was an employee of USBI;

3. That Plaintiff had a disability that limited his work and/or sleep, which was known to USBI;

4. That Plaintiff requested that USBI make reasonable accommodation for his disability so that he would be able to perform the essential job requirements;

5. That Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that he would be able to perform the essential job requirements;

6. That USBI failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made;

7. That Plaintiff was harmed; and

8. That USBI's failure to engage in a good-faith interactive process was a substantial factor in causing Plaintiff's harm.

*See* CACI 2546.

Claim 4: Wrongful Termination in Violation of Public Policy.

As to U.S. Bank, Plaintiff bears the burden of proving each of the following elements:

1. That Plaintiff was employed by U.S. Bank;
2. That U.S. Bank discharged Plaintiff;
3. That discrimination on the basis of Plaintiff's now-alleged disability (i.e., Tourette's Syndrome) was a substantial motivating reason for Plaintiff's discharge;
4. That Plaintiff was harmed; and
5. That the discharge was a substantial factor in causing Plaintiff's harm.

As to USBI, Plaintiff bears the burden of proving each of the following elements:

1. That Plaintiff was employed by USBI;
2. That USBI discharged Plaintiff;
3. That discrimination on the basis of Plaintiff's now-alleged disability (i.e., Tourette's Syndrome) was a substantial motivating reason for Plaintiff's discharge;
4. That Plaintiff was harmed; and
5. That the discharge was a substantial factor in causing Plaintiff's harm.

*See* CACI No. 2430.

Claim 5: Violation of California Business and Professions Code Section 17200.

As to U.S. Bank, Plaintiff bears the burden of proving the following element:

1. U.S. Bank engaged in an unlawful, unfair, or fraudulent business act or practice.

As to USBI, Plaintiff bears the burden of proving the following element:

1. USBI engaged in an unlawful, unfair, or fraudulent business act or practice.

*See* Cal. Bus. Prof. Code § 17200, *et seq.*

<u>Claim 6</u>: Violation of California Labor Code Section 1198.5.

Plaintiff bears the burden of proving[3] the following elements:

1. That USBI was Plaintiff's employer;

2. That USBI maintains personnel records relating to Plaintiff's performance or to any grievance concerning Plaintiff;

3. That Plaintiff or his representative submitted a written request to USBI to receive a copy of the maintained personnel records;

4. That USBI did not provide Plaintiff with a copy of the requested personnel records within 30 calendar days of its receipt of Plaintiff's request;

5. That Plaintiff and USBI did not otherwise agree to a date for production of the requested personnel records outside of the 30-calendar-day window; and

6. That USBI had not already complied with a post-discharge request from Plaintiff to inspect or receive a copy of the personnel records within the same year. *See* Cal. Labor Code § 1198.5.

## C. <u>Affirmative Defenses</u>

<u>Affirmative Defense 1</u>: Statute of Limitations.

California Government Code section 12960(c) requires that, prior to suing under FEHA, a plaintiff must timely exhaust his administrative remedies by filing a complaint with the California Department of Fair Employment and Housing and obtaining a "right to sue" notice. *See* Cal. Gov. Code § 12960(c); *e.g.*, *Pollock v. Tri-Modal Distro. Servs., Inc.*, 11 Cal.5th 918, 931 (2021). FEHA claims that arose prior to January 1, 2019 are subject to a one-year statute of limitations, and FEHA claims that arose on January 1, 2019 or thereafter are subject to a three-year statute of limitations. *See, e.g.*, *Pollock*, 11 Cal.5th at 931; *Hawkins v. Swisher Int'l, Inc.*, 2021 WL 7707940, at *3 (C.D. Cal. Dec. 7, 2021). If such claims are not filed with the DFEH within those respective limitations periods, they are generally time-barred.

---

[3] As with all of Plaintiff's claims pending before the Court, and as addressed *infra*, this claim requires Plaintiff to establish Article III standing.

Affirmative Defense 2: Laches. The elements of this defense are: (1) Plaintiff unreasonably delayed in asserting a claim; and (2) either: (a) Plaintiff acquiesced to the complained-of conduct informing the claim; or (b) U.S. Bank and/or USBI has been prejudiced as a result of Plaintiff's delay in asserting the claim. *See Johnson v. City of Loma Linda,* 24 Cal. 4th 61, 68 (2000); *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000); *Danjaq LLC v. Sony Corp.,* 263 F.3d 942, 951 (9th Cir. 2001).

Affirmative Defense 3: Estoppel. The elements of this defense include consideration of whether: (i) Plaintiff's later position in litigation is "clearly inconsistent" with an earlier position; (ii) Plaintiff succeeded in persuading a court to accept his earlier position, creating a perception that a court was misled; and (iii) Plaintiff would "derive an unfair advantage[,] or impose an unfair detriment," on U.S. Bank and/or USBI. *See Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012).

Affirmative Defense 4: Failure to Mitigate Damages. The elements of this defense are: (1) that Plaintiff failed to use reasonable efforts to mitigate damages; and (2) the amount by which damages would have been mitigated. *See* Manual of Model Civil Jury instructions for the District Courts of the Ninth Circuit, No. 5.3.

Affirmative Defense 5: After-Acquired Evidence. The elements of this defense are: (1) that Plaintiff engaged in misconduct; (2) that U.S. Bank would have discharged Plaintiff because of that. *See* Manual of Model Civil Jury instructions for the District Courts of the Ninth Circuit, No. 10.16.

Affirmative Defense 6: Worker's Compensation Preemption. The elements of this defense are: (1) that Plaintiff was U.S. Bank's employee; (2) that U.S. Bank had workers' compensation insurance covering Plaintiff at the time of injury; (3) that Plaintiff's injury occurred while he was working, or performing a task for or related to the work U.S. Bank hired him to do; and (4) that this task or work contributed to causing the injury. *See* CACI 2800.

Affirmative Defense 7: Same Decision Absent Unlawful Motive. The elements of this defense are: (1) that U.S. Bank had a lawful reason for Plaintiff's discharge; (2) that, if unlawful discrimination was a substantial motivating reason for Plaintiff's discharge, U.S. Bank's lawful reason was also a substantial motivating reason for Plaintiff's discharge; and (3) that U.S. Bank would have discharged Plaintiff anyway at that time based on its lawful reason, even if U.S. Bank had not also been substantially motivated by discrimination. *See* CACI 2512.

Affirmative Defense 8: Failure to Exhaust Administrative Remedies.

California Government Code section 12960(c) requires that, prior to suing under FEHA, a plaintiff must timely exhaust his administrative remedies by filing a complaint with the California Department of Fair Employment and Housing ("DFEH"). *See* Cal. Gov. Code § 12960(c); *e.g.*, *Rodriguez v. Airborne Express*, 265 F.3d 890, 896-97 (9th Cir. 2001). "The scope of the" written administrative charge" (*i.e.*, DFEH complaint) "defines the permissible scope of the subsequent civil action," such that "[a]llegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust." *Id.* at 897.

Affirmative Defense 9: National Banking Act Preemption. The elements of this defense are: (1) U.S. Bank was a "national banking association" within the meaning of the National Banking Act; (2) Plaintiff was a "vice president" of U.S. Bank; and (3) U.S. Bank exercised its power to dismiss Plaintiff as a vice president of the bank. *See* 12 U.S.C. § 24; *see also Wells Fargo Bank v. Superior Court*, 53 Cal. 3d 1082, 1093-94 (1991).

## II. CONTENTIONS OF FACT

### A. Facts in Opposition to Plaintiff's Claims

Claim 1: Disability Discrimination in Violation of FEHA.

1. Plaintiff was employed only by U.S. Bank National Association, while USBI (as the bank's broker-dealer entity) held Plaintiff's FINRA securities licenses for compliance purposes so that Plaintiff could be authorized to provide coaching to

customers as it relates to merger & acquisition opportunities or related referrals to third-party investment banks.

2. Plaintiff was not employed by USBI. USBI never directly or indirectly paid Plaintiff, USBI did not direct or control Plaintiff, and USBI did not retain the right to control the means and manner of Plaintiff's work performance.

3. Plaintiff: (a) did not have a disability that [substantially][4] limited his work and/or sleep; and (b) Defendants did not know that he had such a disability.

(a) Plaintiff was never diagnosed with Tourette's Syndrome. Plaintiff's tic condition did not [substantially] limit a major life activity; when he was employed by U.S. Bank, it did not make the achievement of work or sleep difficult. Defendants did not know that Plaintiff claimed to have Tourette's Syndrome.

(b) Defendants did not know that Plaintiff had a tic condition. Defendants did not know that Plaintiff's tic condition purportedly made the achievement of work or sleep difficult.

4. An essential job duty of Plaintiff's job was to interact and get along with others, and to comply with U.S. Bank's Code of Ethics. Plaintiff was unable to get along with his coworkers and comply with the Code of Ethics, as evidenced by Plaintiff retaliating against his coworker and the effects of his conduct on his coworkers.

5. U.S. Bank discharged Plaintiff for retaliating against a coworker in violation of U.S. Bank's company policy. USBI never discharged Plaintiff, nor took any other adverse employment action against USBI.

6. Plaintiff's alleged disability was not a substantial motivating reason for U.S. Bank's decision to discharge Plaintiff, including because U.S. Bank did not know of the alleged disability, U.S. Bank did not consider the alleged disability in making

[4] The bracketed language here and below indicates evidence based on the ADA standard.

its decision, and the conduct for which Plaintiff was terminated was not directly caused by the disability. U.S. Bank terminated Plaintiff for voluntary conduct that Plaintiff could have avoided. Plaintiff could have taken steps to prevent the confrontation on October 30, 2019 and his conduct at the confrontation on October 30, 2019. Even after the confrontation occurred, Plaintiff was offered the opportunity to provide any additional information to inform the then-ongoing investigation into his conduct, but Plaintiff declined to mention any purported medical condition as a justification of, or need for, accommodation. The decision to discharge Plaintiff was made before the December 16, 2019 meeting between Rod Dolan, Debby Gabris, Jennifer Strada, and Plaintiff. Plaintiff did not inquire about leave until the December 16, 2019 meeting at which his discharge was communicated.

Claim 2: Failure to Provide Reasonable Accommodations in Violation of FEHA.

1. Plaintiff was employed only by U.S. Bank National Association, while USBI (as the bank's broker-dealer entity) held Plaintiff's FINRA securities licenses for compliance purposes so that Plaintiff could be authorized to provide coaching to customers as it relates to merger & acquisition opportunities or related referrals to third-party investment banks.

2. Plaintiff was not employed by USBI. USBI never directly or indirectly paid Plaintiff, USBI did not direct or control Plaintiff, and USBI did not retain the right to control the means and manner of Plaintiff's work performance.

3. Plaintiff did not have a disability that [substantially] limited his work and/or sleep. Plaintiff was never diagnosed with Tourette's Syndrome. Plaintiff's tic condition did not limit a major life activity; when he was employed by U.S. Bank, it did not make the achievement of work or sleep difficult.

4. Defendants did not know that he had a disability that limited his work and/or sleep and Defendants did not receive adequate notice that Plaintiff's disability and desire for reasonable accommodation. Defendants did not know that Plaintiff

claimed to have Tourette's Syndrome. Defendants did not know that Plaintiff had a tic condition. Defendants did not know that Plaintiff's tic condition purportedly made the achievement of work or sleep difficult.

5. An essential job duty of Plaintiff's job was to interact and get along with others, and to comply with U.S. Bank's Code of Ethics. Plaintiff was unable to get along with his coworkers and comply with the Code of Ethics, as evidenced by Plaintiff retaliating against his coworker and the effects of his conduct on his coworkers.

6. Plaintiff did not request or identify a reasonable accommodation for his "Tourette's Syndrome" or tic condition and there was not a reasonable accommodation available that would have enabled Plaintiff to perform the essential functions of the job.

7. and 8. Plaintiff was not harmed by any failure to provide a reasonable accommodation not requested.

<u>Claim 3</u>: Failure to Engage in the Interactive Process in Violation of FEHA.

1. Plaintiff was employed only by U.S. Bank National Association, while USBI (as the bank's broker-dealer entity) held Plaintiff's FINRA securities licenses for compliance purposes so that Plaintiff could be authorized to provide coaching to customers as it relates to merger & acquisition opportunities or related referrals to third-party investment banks.

2. Plaintiff was not employed by USBI. USBI never directly or indirectly paid Plaintiff, USBI did not direct or control Plaintiff, and USBI did not retain the right to control the means and manner of Plaintiff's work performance.

3. Plaintiff: (a) did not have a disability that limited his work and/or sleep; and (b) Defendants did not know that he had such a disability.

(a) Plaintiff was never diagnosed with Tourette's Syndrome. Plaintiff's tic condition did not limit a major life activity; when he was employed by U.S. Bank, it did not make the achievement of work or sleep

difficult. Defendants did not know that Plaintiff claimed to have Tourette's Syndrome.

(b) Defendants did not know that Plaintiff had a tic condition. Defendants did not know that Plaintiff's tic condition purportedly made the achievement of work or sleep difficult.

4. Plaintiff cannot establish that he needed a reasonable accommodation in order to perform the essential job requirements, including because Plaintiff has conceded that at all times in 2019 he was able to perform his job, and that he did not need a modification to perform his job. Plaintiff did not request or identify a reasonable accommodation for his "Tourette's Syndrome" or tic condition, nor any limitations in a major life activity. Plaintiff's first attempt to raise the issue of a leave of absence was after the termination decision was already made and/or communicated.

5. Plaintiff never triggered the interactive process during his employment, much less indicated a willingness to engage in it. When asked during the investigation into his retaliation whether he had any additional information that would help the investigator (Jennifer Strada) understand what occurred, he did not say anything to trigger or engage in the interactive process.

6., 7. and 8. Because Plaintiff did not trigger the interactive process, Defendants did not fail to engage, and Plaintiff was not harmed by any failure to engage by Defendants.

<u>Claim 4</u>: Wrongful Termination in Violation of Public Policy.

Because this claim is predicated on the same facts as the discrimination claim, *see* <u>Claim 1</u> above.

<u>Claim 5</u>: Violation of California Business and Professions Code Section 17200.

1. Neither USBI nor U.S. Bank engaged in an unlawful, unfair, or fraudulent business act or practice. Plaintiff was discharged for retaliating against a coworker in violation of U.S. Bank's company policy.

Because this claim is predicated on the above claims, *see* <u>Claims 1 through 4</u>

above.

Claim 6: Violation of California Labor Code Section 1198.5.

As an initial matter, Plaintiff lacks standing to pursue this claim, Since the filing of this lawsuit, Defendants delivered two checks to Plaintiff's counsel: one for the maximum penalty available by statute, and one for attorneys' fees.

1. Plaintiff was employed only by U.S. Bank National Association, while USBI (as the bank's broker-dealer entity) held Plaintiff's FINRA securities licenses for compliance purposes so that Plaintiff could be authorized to provide coaching to customers as it relates to merger & acquisition opportunities or related referrals to third-party investment banks. Plaintiff was not employed by USBI. USBI never directly or indirectly paid Plaintiff, USBI did not direct or control Plaintiff, and USBI did not retain the right to control the means and manner of Plaintiff's work performance.

2. USBI did not maintain a personnel file for Plaintiff, nor any personnel records relating to Plaintiff's performance or to any grievance concerning Plaintiff.

3. Plaintiff requested his personnel records from U.S. Bank and followed up with U.S. Bank's HR department. Plaintiff never requested personnel records from USBI.

4. U.S. Bank provided Plaintiff with his personnel file within 30 calendar days of receipt of his request.

5. and 6. Not applicable.

**B. Facts in Support of Defendant's Affirmative Defenses**

Affirmative Defense 1: Statute of Limitations

Plaintiff filed a complaint of discrimination with the DFEH on December 15, 2021. Plaintiff's DFEH Complaint only exhausts his administrative remedies as to Defendants' alleged disability discrimination on the specific date of December 16, 2019, which purportedly resulted in Plaintiff's termination, denial of employment benefit and/or privilege, and denial of reasonable accommodation for a disability.

Plaintiff did not exhaust his administrative remedies as to anything else, including but not limited to: (a) conduct on other dates for any FEHA claim; and (b) failure to engage in the interactive process under FEHA. Plaintiff has not filed another complaint of discrimination with the DFEH regarding the factual allegations in this lawsuit.

Affirmative Defense 2: Laches

1. Prior to summary judgment briefing, the only disability Plaintiff asserted—as confirmed by his pleadings, verified discovery responses, and deposition testimony—was "Tourette's Syndrome." Plaintiff filed a complaint of discrimination with the DFEH on December 15, 2021; the only claim identified therein was for disability discrimination on December 16, 2019, which purportedly resulted in Plaintiff's termination, denial of employment benefit and/or privilege, and denial of reasonable accommodation for a disability made after his termination. Plaintiff did not otherwise complain of conduct on other dates, or mention separate failure-to-accommodate or interactive-process claims under FEHA. Plaintiff has necessarily been aware of his own medical conditions and interactions with U.S. Bank.

2. Plaintiff decided upon the manner in which to style his DFEH complaint and pleadings in this case, and Plaintiff chose to limit his purported "disability" under oath in his discovery responses and deposition testimony. Plaintiff's strategic decisions informed the scope of discovery and Defendants' litigation strategy throughout this case, such that Defendants would not—and could not—have known to pursue or develop defenses to otherwise-unasserted allegations and/or claims.

Affirmative Defense 3: Estoppel

Estoppel applies to each of Plaintiff's shifting reasons and explanations that he has given over the course of his employment, post-employment, and through litigation – including but not limited to his shifting termination reasons, his shifting reasons for the confrontation on October 30, 2019, and his shifting disability. For example and without limitation, Defendants will present the following evidence to support its

estoppel defense:

*Estoppel as to Disability*

1. In his pleadings, verified discovery responses, and sworn deposition testimony, Plaintiff represented that the only "disability" he was claiming in this litigation was "Tourette's Syndrome," but—in summary judgment briefing for this Court—Plaintiff cited "anxiety" and his "tic condition" as additional "disabilities." Plaintiff's psychiatric expert report also opines that he may have other conditions, including but not limited to, PTSD and/or acute stress disorder.

2. The Complaint Plaintiff filed with this Court named "Tourette's Syndrome" as the only actionable "disability" being claimed by Plaintiff.

3. Plaintiff's strategic decisions informed the scope of discovery and Defendants' litigation strategy throughout this case, such that Defendants would not—and could not—have known to pursue or develop defenses to otherwise-unasserted allegations and/or claims.

*Estoppel as to Financial Reason for Termination*

1. In his Complaint, Plaintiff alleges that, "[d]espite all the business that Mr. Andrews was bringing to his group, his supervisor decided to push Mr. Andrews out in a shortsighted attempt to take over his business." (Complaint ¶ 3.) In the parties' joint report, Plaintiff stated: "Mr. Andrews expects to prove that his termination was based on pretext and actually motivated by his supervisor's greedy desire to take commissions Mr. Andrews should have been paid." (Dkt. 15, 5:1-4.) And in opposition to summary judgment, Plaintiff argued that Plaintiff's supervisor Rod Dolan was "looking to save on expenses" so he terminated Plaintiff, terminated Aptin a year later, and forced Gulbis to resign. (Dkt. 55, 8:11-12.)

2. At the Scheduling Conference, the Court asked about Plaintiff's position that Dolan stood to gain financially from his termination, and Plaintiff confirmed that was his position.

3. Plaintiff decided upon how to pursue his claims and frame the reason for his termination. Plaintiff's strategic decisions informed the scope of discovery and U.S. Bank's litigation strategy throughout this case.

Affirmative Defense 4: Failure to Mitigate Damages

1. Plaintiff has failed to use reasonable efforts to find comparable employment. From December 2019 to March 2022, Plaintiff only submitted ten resumes to ten companies. Plaintiff obtained work with Tellson Securities in March or April 2020. Plaintiff's relationship with Tellson Securities terminated in August 2020 and was publicly reported as a voluntary termination. While working with Tellson Securities, Plaintiff engaged in outside business activity that he did not fully disclose, and which was deemed to have violated FINRA Rules 3270 and 2010. In June 2022, FINRA imposed a two-month suspension and $5,000 fine on Plaintiff for engaging in outside business activity that was not fully disclosed to Tellson Securities. Plaintiff has chosen not to be FINRA licensed/registered and continues not to be FINRA licensed/registered. Meanwhile, Plaintiff's job with U.S. Bank required and similar jobs require a FINRA license/registration. *See also* initial and supplemental expert reports of Robert W. Crandall.

2. In 2019, according to Plaintiff, Plaintiff received no other income, payment, wages or salary from an entity other than U.S. Bank. In 2020, according to Plaintiff, Plaintiff received approximately $53,000 in compensation offset by $767 in losses through one of his two self-owned companies. In 2021, according to Plaintiff, Plaintiff's two self-owned companies earned him $68,882 in salary and $70,761 in S-Corp earnings. In 2022, Plaintiff according to Plaintiff, Plaintiff has not earned any income. *See also* initial and supplemental expert reports of Robert W. Crandall.

Affirmative Defense 5: After-Acquired Evidence

1. Plaintiff lied in an investigation and/or to HR, and failed to provide information to questions while participating in U.S. Bank's investigation into his conduct.

2. U.S. Bank would have discharged Plaintiff for this misconduct.

Affirmative Defense 6: Workers' Compensation Preemption

1. U.S. Bank employed Plaintiff.

2. U.S. Bank had workers' compensation insurance covering Plaintiff in 2019.

3. The October 29, 2019 meeting between Rod Dolan (an employee of U.S. Bank) and Plaintiff dealt with, and occurred in the course of, Plaintiff's employment with U.S. Bank.

4. Based on the Dr. Nair report submitted by Plaintiff, Plaintiff suffered from mental and emotional effects that immediately resulted from Plaintiff's October 29, 2019 meeting with Rod Dolan.

All other emotional distress or mental and emotional effects claimed by Plaintiff are also due to conduct within the course of employment and are preempted.

Affirmative Defense 7: Same Decision Absent Unlawful Motive

1. Plaintiff was discharged for retaliating against a coworker in violation of U.S. Bank policy. Plaintiff has represented to the Court that he believes he was discharged by U.S. Bank for, *inter alia*, financial reasons.

2. Even if unlawful discrimination were a substantial motivating reason for Plaintiff's discharge (which it was not), U.S. Bank's honest belief that Plaintiff violated its company policies by retaliating against a coworker was also a substantial motivating reason for his discharge. And, by Plaintiff's account, his discharge for financial reasons would be yet another substantial motivating reason for his discharge.

3. Even if unlawful discrimination was a substantial motivating reason for Plaintiff's discharge (which it was not), U.S. Bank would have discharged Plaintiff on December 16, 2019 based on his retaliation against a coworker in violation of U.S. Bank policy, even if it had not also been substantially motivated by discrimination (which it was not).

Affirmative Defense 8: Failure to Exhaust Administrative Remedies

1. Plaintiff filed a complaint of discrimination with DFEH on December 15, 2021.

2. The only conduct alleged in Plaintiff's December 15, 2021 complaint was disability discrimination on December 16, 2019, which purportedly resulted in Plaintiff's termination, denial of employment benefit and/or privilege, and denial of reasonable accommodation for a disability on that same date.

3. Plaintiff has not filed another complaint of discrimination with DFEH regarding the factual allegations in this lawsuit.

Affirmative Defense 9: National Banking Act Preemption

1. At all relevant times, U.S. Bank has remained a national banking association.

2. Plaintiff was a "senior vice president" of U.S. Bank.

3. U.S. Bank exercised its power to dismiss Plaintiff as a "senior vice president" of U.S. Bank.

Additionally, the senior vice president position is created by U.S. Bank's board of directors and listed in U.S. Bank's bylaws. Plaintiff was either appointed by the board of directors or by U.S. Bank's CEO, who had authority to make the appointment based on the board of directors' delegation of authority. Plaintiff had express legal authority to bind U.S. Bank in transactions by signing contracts and instruments, and had decisionmaking authority related to fundamental banking operations in such a manner as to affect the public's trust in U.S. Bank. U.S. Bank exercised its power to dismiss Plaintiff as a "senior vice president" of U.S. Bank. U.S. Bank's board of directors ratified the decision to discharge Plaintiff.

## III. CONTENTIONS OF LAW

Defendants submit these contentions of law while their motion for summary judgment as to all of Plaintiff's claims remains pending.

### A. USBI Did Not Employ Plaintiff

Plaintiff was employed by U.S. Bank—not USBI. As U.S. Bank's broker-dealer entity, USBI simply held Plaintiff's FINRA license. U.S. Bank employees like Plaintiff, who belong to U.S. Bank's Business Owner Advisory services ("BOAS") group, are unable to engage in merger & acquisition coaching or third-party investment banking referrals without having their FINRA licenses held by USBI, as U.S. Bank's broker-dealer entity.

"To be an employee within the meaning of FEHA, a plaintiff must receive financial remuneration, either direct or indirect." *Talley v. County of Fresco*, 41 Cal. App. 5th 1060, 1091 (2020). This Court has looked to the DFEH definition of "employee," the California Labor Code definition of "employee" status, and the Title VII test for assessing an employer-employee relationship in determining the definition of "employee" under FEHA. *See Farias v. Nat'l R.R. Passenger Corp.*, 2015 WL 4749002, at *3-7 (C.D. Cal. Aug. 11, 2015) (Carter, J.). These references look to, in relevant part, the "direction and control of an employer," "reumuneration," and "the employer's right to control the means and manner of the worker's performance." *See id.* (noting, for example, that—under Title VII—"[t]he absence of any direct or indirect remuneration from the defendant to the plaintiff . . . is at least strong evidence that an employment relationship did not exist").

Taking these considerations together: USBI never directly or indirectly paid Plaintiff, did not direct or control Plaintiff, and did not retain the right to control the means and manner of Plaintiff's work performance. Accordingly, Plaintiff was not an employee of USBI, and remained an employee of U.S. Bank alone.

### B. Plaintiff May Not Introduce New "Disabilities" other than Tourette's Syndrome

Plaintiff was required to specifically allege his disability in his pleadings. *Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 908 (N.D. Cal. 2015); *Bell v. Univ. of Cal. Davis Med. Ctr.*, 2013 WL 1896318, *3-4 (E.D. Cal. May 6, 2013).

"Without this information, the court cannot make a determination as to whether plaintiff is disabled. . . ." *Bell*, 2013 WL 1896318 at *4 (emphasis added). Plaintiff only plead Tourette's Syndrome as his disability. (Complaint, Dkt. 1-3.)

Federal Rule of Civil Procedure 26(e) requires that a party who has responded to an interrogatory "*must* supplement or correct its response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e) (emphasis added). In his verified supplemental discovery responses—sworn to under oath—Plaintiff identified "a condition commonly referred to as Tourette's Syndrome" as his *only* purported disability while employed by U.S. Bank.

### C. Conduct Is Not "Because of" a Disability Where, Due to Non-Disability Related Carelessness or Inattention, Plaintiff Did Not Take Options Available to Avoid Engaging in the Conduct

The Ninth Circuit has recognized that "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination," *see Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001), but it has since clarified that this only applies to conduct that is the "direct result" of a disability—i.e. where there is "direct causation," *Alamillo v. BNSF Ry. Co.*, 869 F.3d 916, 921-22 (9th Cir. 2017). Conduct is not "part of a disability" where the disability "may have been a contributing factor" to the conduct, but only due to non-disability related carelessness and inattention. *Id.*; *see also, e.g.*, *Pietro v. Walt Disney Co.*, 2012 WL 4755415, at *8-10 (C.D. Cal. Oct. 4, 2012) (Carter, J.) (granting summary judgment for the employer on the issue of causation where the plaintiff "presented no evidence that his disability 'caused' his 'tardiness' in calling [the employer] to provide notices of . . . absences before his shifts," and the evidence instead showed that the plaintiff's disability "did not prevent him from having either himself or his wife call [the employer] prior to the beginning of [his] . . . shift," including through the

plaintiff's testimony that his failure to call "was due to his oversleeping," and not his asserted disability).

### D. A Termination Is Not "Because of" a Disability Where the Disability Made No Difference in the Termination Outcome

An employer does not terminate an employee "because of" a disability if the disability made no difference in the termination outcome—for example, where the employer did not know of the disability when it initiated disciplinary proceedings, and then "disregarded" the disability when it made its termination decision. See Alamillo, 869 F.3d at 920.

Moreover, an employer can only take an adverse action "because of" a disability if it knows of the disability. *See*, *e.g.*, *Brundage v. Hahn*, 57 Cal. App. 4th 228, 235-37 (1997). "While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts." *Id.*

### E. Investigation Critiques Do Not Undermine a Legitimate Termination Reason Unless the Critiques Reflect "Inexplicable Unfairness" in the Investigation

"The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 344 (2008) (affirming summary judgment in a disability discrimination case). Moreover, "the employer's stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve." *Id.*

An employer is not required to conduct an investigation before terminating an employee. *See Pietro*, 2012 WL 4755415 (granting summary judgment in a disability discrimination case where the plaintiff was terminated for a policy violation, and without the employer conducting an investigation); *Arteaga*, 163 Cal. App. 4th at 344 (an employer can terminate an employee for any or no reason).

Plaintiff's critiques of the investigation are therefore legally irrelevant.

Moreover, as a matter of law, Plaintiff cannot establish discriminatory intent in the face of an otherwise-legitimate termination reason by simply disagreeing with the method of the investigation, the conclusion of the investigation, challenging its objective accuracy, and/or seeking to substitute an employer's interpretation of its own policies.

To the extent an employee challenges legitimate reasons as "false," it is not important whether they were *objectively* false . . . . Rather, courts only require that an employer honestly believed its reasons for its actions, even if its reason is foolish or trivial or even baseless." *Dunger v. Union Pac. R.R. Co.*, 2019 WL 3249606, at *4 (C.D. Cal. June 3, 2019) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002)).

To the extent Plaintiff challenges the quality of the CIT investigation, such critiques are generally insufficient, as a matter of law, to prove pretext. *See Mauran v. Wal-Mart Stores, Inc*., 2017 WL 11636674, at *6 (C.D. Cal. Sept. 22, 2017) ("[t]he plaintiff must cite evidence showing the defendant did not honestly believe a violation [of its policy] occurred"); *Guthmann v. Classic Residence Mgmt. LP*, 2017 WL 3007076, at *14 (N.D. Cal. July 14, 2017) (explaining that a plaintiff must generally show that the investigation was "inexplicably unfair," and "not just flawed"; "even if Defendants' investigation was flawed in some way, 'merely pointing to an employer's shoddy investigation efforts is [not] sufficient"); *Day v. Sears Holding Corp*., 930 F. Supp. 2d 1146, 1174-75 (C.D. Cal. 2013).

### **F. <u>To Trigger a Duty to Engage in the Interactive Process, an Employee Must Request an Accommodation Prior to Termination</u>**

"[T]he employee bears the burden of giving the employer notice of his or her disability," and "[t]he burden to accommodate does not arise until the employer is aware of the person's disability." *Dillon v. Coughetry Packing, LLC*, 2018 WL 6333689, at *2 (C.D. Cal. Sept. 4, 2018); *see also Ellis v. City of Reedley*, 2007 WL 1098571, at *13 (E.D. Cal. Apr. 12, 2007) ("The duty attaches when there is a request

for accommodation. . . . Because there was no knowledge, Defendants did not have a duty to engage in the interactive process or to offer accommodation."); *Issaian v. J.B. Hunt Transp. Servs., Inc.*, 2021 WL 2450784, at *4-5 (C.D. Cal. May 14, 2021), citing *Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1013 (2009) ("Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the employee bears the burden to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.").

"An employee cannot demand clairvoyance of his employer." *Issaian*, 2021 WL 2450784, at *4-5. "An employer's general knowledge of certain symptoms of an employee's disability is insufficient to put an employer on notice of the particular accommodations required." *Id.*

Plaintiff "must demonstrate that he 'tender[ed] a specific request for a necessary accommodation.'" *Striplin v. Shamrock Foods Co., Inc.*, 2016 W 11165873, at *7 (C.D. Cal. Mar. 24, 2016).

### G. <u>Failure-to-Accommodate and Interactive-Process Claims Require That a Reasonable Accommodation Would Have Been Available at the Time the Interactive Process Should Have Occurred</u>

Plaintiff's accommodation and interactive process claims also fail because he cannot identify a reasonable accommodation that "would have been available at the time the interactive process should have occurred." *Alamillo*, 869 F.3d at 922-23; *see also Stevenson v. Abbott Labs.*, 2014 WL 12677326, at *5 (C.D. Cal. Mar. 21, 2014) (Carter, J.) ("the 'interactive process' requirement applies only when a reasonable accommodation is possible"). An employer is not required to offer an **un**reasonable accommodation. *Reynoso v. Cnty. of Ventura*, 2022 WL 2092909, at *15 (C.D. Cal. Mar. 8, 2022).

### H. Excusing the Failure to Control a Controllable Disability (or Offering an Employee a "Second Chance") Is Not a "Reasonable" Accommodation.

The Ninth Circuit has made clear that "'[r]easonable accommodation' does not include excusing a failure to control a controllable disability or giving an employee a 'second chance' to control the disability in the future." *Alamillo*, 869 F.3d at 922. Reasonable accommodation is always *prospective*, and therefore an employer is not required to excuse past misconduct even if it is the result of the individual's disability. *Id.* An employer does not violate its reasonable accommodation duty by failing to choose a non-termination option or to offer leniency in light of the circumstances. *Id.* In other words, a request/option to "not terminate [Plaintiff] for prior misconduct" does "not qualify as [a] reasonable accommodation[] under California law." *Id.*

### I. Plaintiff's Derivative Wrongful-Termination and Unfair-Competition Claims Fail in the Absence of an Underlying FEHA Violation

Where claims for wrongful termination and unfair competition are predicated on unsuccessful FEHA claims, they fail with those unsuccessful FEHA claims. *See, e.g.*, *Cortes*, 2019 WL 782447, at *7-8 (C.D. Cal. Dec. 9, 2019).

### J. Plaintiff's Personnel-Record Claim Is Now Moot, and Plaintiff Lacks Standing to Pursue Them

Federal courts are courts of limited jurisdiction. *See, e.g.*, *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 861 (9th Cir. 2017) (citing Article III of the U.S. Constitution). The "case or controversy" requirement in Article III requires that, for a federal court to have the requisite standing to resolve a claim, a would-be plaintiff must show (i) an injury in fact, (ii) that the injury is fairly traceable to a complained-of action by the would-be defendant; and (iii) that it is likely—not merely speculative— "that the injury will be redressed by a favorable decision" of the court. *See id.* at 861-62. The related doctrine of "mootness . . . requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Id.* at 862 (characterizing "mootness" as "the doctrine of standing set in a time frame"). "The basic question in determining

mootness is whether there is a present controversy *as to which effective relief can be granted*." *Id.* (emphasis added) (explaining that "mootness turns on the ability of the district court to award effective relief").

Under California Labor Code § 1198.5, the only statutory relief available to Plaintiff for his personnel-record claim would be $750, or an action for injunctive relief to obtain compliance with the review requirements and obtain costs and reasonable attorneys' fees—though, if a current or former employee files a lawsuit in which his personnel records are "relevant," his right to inspection ceases during the pendency of the lawsuit. Cal. Labor Code §§ 1198.5(k)-(l), (o). Plaintiff's Complaint seeks only those "penalties and injunctive relief statutorily afforded him" for this claim. *See* Dkt. 1-1, 16:15-16.

As to any sought injunctive relief, Plaintiff was already allowed to review the entirety of his personnel records, and—given the other claims he is pursuing—his right to inspection would, in any event, be inoperative during the pendency of these claims. By his own admission in his opposition to summary judgment, he has been allowed to review the entirety of his personnel file, so there is nothing left for this Court to order by way of injunctive relief for review of personnel records. (*See* Dkt. 55, 26:8-10.)

As to any sought monetary relief, he has already been tendered the maximum penalty available by statute, as well as compensation for attorneys' fees. Accordingly, there is nothing left for Plaintiff to seek as relief for this claim, and he may not manufacture standing by ignoring the tendered relief he requested. *See, e.g.*, *Jackson v. Napolitano*, 2020 WL 5709284, at *3-6 (S.D. Cal. Sept. 23, 2020) (distinguishing the mootness analyses for putative class representatives from individual plaintiffs) ("[T]he union has refunded (or attempted to refund) Plaintiff's wrongly-withheld dues as Plaintiffs asked it to. Plaintiffs have refused to accept them, not because something is unsatisfactory about the refund, but because they want to keep their injury intact for standing purposes. A plaintiff's interest in keeping the suit going . . . is not enough to

save a claim from mootness."); *see also, e.g.*, *Bayer*, 861 F.3d at 866-67 (noting that, as a "long-established" matter, any remaining interest in attorneys' fees and legal costs associated with a lawsuit may not, standing alone, confer Article III jurisdiction and avoid mootness where no Article III jurisdiction exists "on the merits of the underlying claim"; "a case or controversy sufficient to confer Article III jurisdiction exists only when succeeding in the litigation will afford 'the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself.'").

**K. Termination from Subsequent Employment May Limit Damages Claimed Against the Prior Employer**

Where a defendant raises a failure-to-mitigate defense, and the plaintiff has been terminated from a subsequent employer, California courts have allowed that subsequent termination to be considered in limiting damages claimed against the initial employer. *See Stanfield v. Hamer Toyota, Inc.*, 37 Cal. App. 4th 1495, 1502-03 (2d Dist. 1995); BAJI 10.16; *see also, e.g.*, *Ernst v. HB Aspen, Inc.*, 2008 WL 11337009, at *6-7 (C.D. Cal. Feb. 4, 2008).

**L. Plaintiff's State-Law Claims Are Preempted by the National Banking Act**

The National Banking Act provides that a national banking association has the "power" to appoint "officers…and dismiss such officers…at their pleasure, and appoint others to fill their places." 12 U.S.C. § 24. Although the federal discrimination statutes (here, the ADA) limit this power and qualify the Section 24 immunity, California laws do not limit the immunity to the extent that they confer different or greater protection than federal law. *Peatros v. Bank of America NT & SA*, 22 Cal. 4th 147, 168-173 (2000).

Section 24 applies because Plaintiff was an appointed officer of U.S. Bank, with the ability to bind the bank by contract, and his termination was ratified by the board. Therefore, the following are preempted: Plaintiff's disability claims under FEHA to the extent that FEHA confers greater protections than the ADA; FEHA's provision of

unlimited compensatory and punitive damages, which allows for greater recover than under the ADA; and Plaintiff's wrongful-termination and unfair-competition claims. *Id.*; *Wells Fargo Bank v. Superior Court*, 53 Cal. 3d 1082, 1093-94 (1991).

**M. <u>Plaintiff Cannot Pursue a Standalone Claim for "Failure to Engage in the Interactive Process" in Light of National Banking Act Preemption of His FEHA Claims.</u>**

As discussed *supra*, application of the National Banking Act, 12 U.S.C. § 24, preempts the FEHA claims against U.S. Bank to the extent that FEHA confers greater protects than the ADA. In light of this preemption, Plaintiff's interactive-process claim cannot be maintained or pursued, as the Ninth Circuit has confirmed that no standalone claim exists for "failure to engage in the interactive process." *See Snapp*, 889 F.3d at 1095 ("The Ninth Circuit has held that notifying an employer of a need for an accommodation triggers a duty to engage in an 'interactive process' through which the employer and employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee. . . [T]he Ninth Circuit [has] held that if an employer receives notice and fails to engage in the interactive process in good faith, the employer will face liability '*if a reasonable accommodation would have been possible*.' In other words, there exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation." (internal citations omitted)).

**N. <u>Plaintiff Must Show "*Substantial* Limitation" to a Major Life Activity for His Disability-Based Claims in Light of National Banking Act Preemption of His FEHA Claims.</u>**

As discussed *supra*, application of the National Banking Act, 12 U.S.C. § 24, preempts the FEHA claims against U.S. Bank to the extent that FEHA confers greater protects than the ADA. In light of this preemption, Plaintiff must prove that he was *substantially* limited in his work and/or sleep by his purported disability, as required by the ADA. *See* Manual of Model Civil Jury instructions for the District Courts of the Ninth Circuit, No. 12.1A, 12.7; 42 U.S.C. § 12102(1)(A) (defining "disability" as

"a physical or mental impairment that *substantially limits* one or more major life activities of [the] individual" (emphasis added)).

### O. Punitive Damages Are Unavailable

Plaintiff cannot recover punitive damages because he cannot meet the "onerous" burden of establishing "by clear and convincing evidence" that an officer, director, or managing agent of U.S. Bank was guilty of "oppression, fraud, or malice." Cal Civ. Code § 3294; *Aquino v. Super. Ct.,* 21 Cal. App. 4th 847, 857-58 (1993). "Clear and convincing evidence" requires a finding of "substantial probability." *In re Angelia P.,* 28 Cal. 3d 908, 919 (1981) (the evidence must be "so clear as to leave no substantial doubt [and] sufficiently strong to command the unhesitating assent of every reasonable mind") (quotations and citations removed).

## IV. ANTICIPATED EVIDENTIARY ISSUES

### A. Plaintiff's Self-Diagnostic Testimony

Defendants anticipate that Plaintiff will attempt to offer his own personal understanding that he had Tourette's Syndrome. Self-diagnostic testimony is inadmissible. *See, e.g.*, *Core v. Casino Ctr.,* LLC, 2021 WL 3148875, at *6-7 (C.D. Cal. Mar. 22, 2021) (granting, in relevant part, motion *in limine* seeking to exclude self-diagnostic testimony of the plaintiff, and only permitting the plaintiff to testify as to symptoms and how they made property accessibility difficult); *see also, e.g.*, *Caesar v. Lopez*, 2019 WL 3860108, at *8 (E.D. Cal. Aug. 19, 2019) (citing Fed. R. Evid. 701, 702) ("Plaintiff is not competent to testify to a medical diagnosis . . . . Plaintiff does not have medical training and is not a medical professional with such expertise.") Defendants may file a Motion *in Limine* regarding this issue.

### B. Plaintiff's Reliance on a Disability Other than Tourette's Syndrome

As discussed above, Plaintiff only identified Tourette's Syndrome as his disability in the pleadings and discovery. Defendants anticipate that Plaintiff may attempt to rely on other conditions – e.g., anxiety, PTSD, and/or acute stress disorder

(among others and without limitation) – to support his claims. Defendants may file a Motion *in Limine* regarding this issue.

**C. <u>Scott Barer, Plaintiff's HR Expert</u>**

Defendants anticipate that Plaintiff will offer the testimony and/or report of Scott Barer, who Plaintiff designated as an HR expert. Defendants object to this, including because Barer's opinions do not meet the standards of Federal Rule of Evidence 702, and his opinions/testimony are unreliable and not relevant. Among other things, and without limitation, Barer's opinions are not the product of reliable principles or methods, Barer presents speculation and *ipse dixit*, Barer does not rely on sufficient facts and data and instead misstates the facts, and his anticipated testimony does not help the jury. Defendants may file a Motion *in Limine* regarding Scott Barer's testimony and report.

**D. <u>Dr. Nair, Plaintiff's Forensic Psychiatrist</u>**

Defendants anticipate that Plaintiff will offer the testimony and/or reports of Dr. Nair, who Plaintiff designated as forensic psychiatrist. Defendants object to this, including because Dr. Nair's opinions do not meet the standards of Federal Rule of Evidence 702, and his opinions/testimony are unreliable and not relevant. Among other things, and without limitation, Dr. Nair has changed his position on the cause of Plaintiff's conduct, conflates two distinct medical diagnoses (Tourette's Syndrome and chronic motor tic disorder), raises medical issues not at issue in the lawsuit (e.g., PTSD and acute stress disorder), does not rely on sufficient facts and data and instead misstates the facts, and misstates medical principles. Defendants may file a Motion *in Limine* regarding Dr. Nair's testimony and report.

**E. <u>Edgars Gulbis as a Non-Retained "Expert"</u>**

Plaintiff has designated Edgars Gulbis as a unretained "expert" on (*inter alia*) "valuing and selling businesses" and a certain engagement that was entered into and culminated after Plaintiff's termination. Defendants object to this, including because Gulbis is not qualified as an expert, his "opinions" do not meet the standards of

Federal Rule of Evidence 702, and his opinions/testimony are unreliable and not relevant. Defendants may file a Motion *in Limine* to preclude Edgars Gulbis from providing an opinion testimony or otherwise acting as an "expert."

**F. Plaintiff's Treating Physician and Psychiatrists**

Plaintiff has designated his treating physician and psychiatrists as unretained experts. Defendants object to this, including because the "opinions" Plaintiff expects to offer do not meet the standards of Federal Rule of Evidence 702, and the opinions/testimony are unreliable and not relevant.

Additionally, and without limitation, the anticipated testimony includes that Plaintiff was not malingering. This is prejudicial and irrelevant because the issue here is not whether Plaintiff engaged in malingering with his treating doctors. The issue is that Plaintiff is malingering in claiming that his conduct on October 30, 2019 is a medical event and/or caused by a disability. Plaintiff's treating doctors have no relevant evidence about this issue because Plaintiff never reported the event to his doctors.

Defendants object to this, and may file a Motion *in Limine* as to these issues and any other issues relating to Plaintiff's treating physicians.

**G. Other Experts**

The close of expert depositions is November 7, 2022. Neither party has deposed the other's retained experts. And overall discovery has not closed as to experts (whether retained or unretained). Defendants therefore reserve the right to raise challenges, including under Federal Rule of Evidence 702, to Plaintiff's other experts (whether retained or unretained), including by way of Motion *in Limine*.

**H. Irrelevant/Prejudicial/Misleading/Confusing Testimony of Edgars Gulbis and Ary Aptin**

Plaintiff may try to introduce inadmissible testimony from Edgars Gulbis and Ary Aptin – both of whom have independent biases against U.S. Bank and Rod Dolan based on the circumstances of their employment and terminations – including, but not

limited to, testimony contradicting the facts that they admittedly reported to U.S. Bank in 2019, how they perceive the importance/severity events of October 30, 2019 in hindsight three years later, their opinions on whether Plaintiff violated U.S. Bank's policies by retaliating, etc. Defendants may seek to exclude such testimony, including by way of Motion *in Limine*.

### I. Speculative Testimony About Whether Plaintiff Could Do His Job Without Medication

Plaintiff gave self-serving, speculative testimony that it "would have been impossible to do his job without medication." This non-expert personal opinion is not admissible evidence, and Defendants will seek to exclude such testimony, including by way of Motion *in Limine*.

### J. "Character Witnesses"

Plaintiff has indicated that he intends to use Paul Buck – a "former work colleague" – as a witness because he is "knowledgeable about Plaintiff's character and professional reputation." Paul Buck is not a current or former U.S. Bank employee. Defendants object to the introduction of this witness and his testimony and any "character witnesses" generally, and may file a Motion *in Limine* about this issue.

### K. Hearsay, Speculation, and Conclusion

Defendants anticipate that Plaintiff will attempt to introduce inadmissible hearsay statements from witnesses in support of each of his causes of action. Defendants intend to object to any and all hearsay evidence under Federal Rules of Evidence Rules 801 and 803.

Defendants anticipate that Plaintiff will attempt to introduce inadmissible evidence that lacks foundation, is speculative, and/or is an improper lay opinion. Defendants intend to object to all such evidence under Federal Rules of Evidence 602 and 701.

### L. Reservation of Rights

Defendants reserve the right to raise further evidentiary issues regarding

Plaintiff's proffered evidence as necessary. Defendants also reserve the right to oppose any motions *in limine* brought by Plaintiff, and also respond to any other evidentiary issues that Plaintiff raises.

## V. BIFURCATION OF ISSUES

Defendants request bifurcation of liability and damages. Should liability be established, which Defendants deny is warranted, the damages claimed in this case involve complex issues and will likely require resolution over the course of multiple days, with testimony from a number of witnesses.

## VI. JURY TRIAL

Plaintiff demanded a jury trial for all claims in the Complaint.

## VII. ATTORNEYS' FEES

Defendants reserve the right to seek recovery of attorneys' fees. Defendants should be awarded their attorneys' fees to the extent that he filed or continued to litigate a case that was frivolous, unreasonable, or groundless. *See Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro*, 91 Cal. App. 4th 859, 872, (2001).

## VIII. ABANDOMENT OF ISSUES

While Plaintiff has not stated that he is abandoning any claims, Defendants have addressed the availability of claims *supra* with respect to National Banking Act preemption, the applicable statute of limitations, laches, and Plaintiff's failure to exhaust his administrative remedies.

U.S. Bank and USBI reserve the right to pursue any and all affirmative defenses set forth in their respective Answers at trial. At this time, however, U.S. Bank and USBI do not intend to pursue the following "affirmative defenses" listed in their answers (some of which are not actually affirmative defenses in that they call out a failure of Plaintiff to meet an element or make a showing it is his burden to make, rather than requiring Defendants to make a showing): failure to state facts sufficient to

state a cause of action; avoidable consequences; legitimate and non-retaliatory/non-discriminatory reason; legitimate business reason/necessity; good-faith reliance on law; waiver; unclean hands; not knowing, willful, or intentional; failure to follow company policy; unauthorized conduct; no unfair business practices; any alleged harm to Plaintiff outweighed; no underlying liability; adequate remedy at law; offset/recoupment, causation/contribution; *res judicata* and collateral estoppel; and misjoinder of parties. *See* Dkt. 1-2, 1-3.

Dated: October 24, 2022

WINSTON & STRAWN LLP

By: */s/ Caitlin W. Tran*
Joan B. Tucker Fife
Emilie C. Woodhead
Caitlin W. Tran
Attorneys for Defendants
U.S. BANK NATIONAL ASSOCIATION and U.S. BANCORP INVESTMENTS, INC.